Jones, J.
We hold that a corporation organized and conducted exclusively for the purpose of publishing and distributing the Holy Bible, when neither the corporation nor its corporate activity is directly associated with an organized religious denomination or with an organization having as its avowed purpose the furthering of a recognized religion, is entitled only to a qualified exemption from real property *82 taxation under section 421 (subd 1, par [b]) of the Real Property Tax Law. In this instance pursuant to the provisions of that same paragraph such qualified exemption has been withdrawn. Accordingly, we conclude that the real property of the American Bible Society located in the City of New York is subject to taxation.
The American Bible Society was founded in 1816 and chartered by special act of the Legislature in 1841 "for the purpose of publishing and promoting a general circulation of the holy scriptures, without note or comment”. (L 1841, ch 68.) With some expansion and restatement of charter language, the Society has remained faithful to that original purpose to the present day. The "Bible House” of the Society is located at 1865 Broadway in the City of New York; eight and one-half floors are occupied and used by the Society and the remaining three and one-half floors are leased on a nonprofit basis to three tenants which the city appears to concede are tax exempt organizations. It is from this base that the Society conducts its impressive activities in the translation, publication and world-wide distribution of the Bible.
It appears that the Society was first granted statutory tax exempt status for its real property in 1894 pursuant to the provisions of chapter 498 of the Laws of 1893 (People ex rel. American Bible Soc. v Commissioners of Taxes & Assessments For City & County of N. Y., 76 Hun 491, affd 142 NY 348). The city did not see fit in that case to contest the Society’s right to exemption under the 1893 act.[1] The controversy then revolved rather about the effective date of the act. The real property of the Society thereafter continued to enjoy tax exempt status until the adoption by the City of New York in 1971 of Local Law No. 46[2] pursuant to the authority of section
*83 421 (subd 1, par jb]) of the Real Property Tax Law (L 1971, ch 414),* *[3] both effective January 1, 1972. The Society’s real property was transferred to taxable status on the city tax rolls pursuant to that legislation. The Society paid the taxes assessed under protest, and has duly filed applications for exemption which have routinely been denied. The present article 78 proceeding was instituted in 1973. Special Term directed that the Society’s real property be removed from the tax rolls, having found that "the four organizations occupying the real property in question are organized exclusively for religious and/or charitable and/or educational purposes” and that "each separate occupancy is used exclusively for one or more such purposes”. The Appellate Division reversed, concluding that petitioner was organized exclusively (which the court correctly interpreted as "primarily” [Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 153, and cases cited]) for Bible purposes and that any religious or educational purposes, or benefits were merely incidental and thus insufficient to secure for petitioner the unqualified exemption of section 421 (subd 1, par [a]) of the Real Property Tax Law. We agree.
At the threshold, we reject petitioner’s suggestion that the *84 decision in People ex rel. American Bible Soc. v Commissioners of Taxes & Assessment (76 Hun 491, affd 142 NY 348, supra) is dispositive of the present litigation. The statute now under consideration has undergone substantial amendment and is significantly different from the statute involved in the earlier case. Thus, the claim now advanced by the city is not precluded under the principle of res judicata. Additionally, since, as noted, the entitlement of the American Bible Society to tax exemption was not considered by the court and was not the subject of its deliberative disposition in the earlier case, the doctrine of stare decisis has no application.
We turn then to the present case. A brief consideration of the historical development of the tax exemption statutes will be helpful. In 1893 the Legislature carried forward pre-existing exemptions by the enactment of chapter 498 of the laws of that year. That chapter provided for an exemption from taxation of real property of a corporation or organization organized exclusively "for the moral and mental improvement of men and women or for religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes”. In 1896, the statute was amended to supplement the list of generally exempt purposes by adding seven, more specific purposes—Bible, tract, benevolent, infirmary, scientific, literary and library (L 1896, ch 908). We conclude that this amendment reflected the intention of the Legislature to accord tax exemption to additional organizations which would not have come under the pre-existing broad categorical umbrellas. This resulted, in the present context, in assuring exemption to all corporations organized exclusively for Bible purposes, irrespective of whether it might otherwise be said that the particular corporation was organized exclusively for religious purposes. In the period 1896 to 1971 exempt status was granted to four more specific purpose categories—public playground, bar association, medical society and enforcement of laws relating to children or animals.
In 1971 the Legislature recast the exemption scheme (L 1971, ch 414). Whereas prior thereto all enumerated purposes had enjoyed an unqualified exemption, effective January 1, 1972, the exemptions were divided into two categories—unqualified and qualified. The more general purposes in the unqualified category—religious, charitable, hospital, educational and cemetery—continue to enjoy absolute exemption (§ 421, subd 1, par [a]). The purposes in the second category, *85 more specific and, significant for present purposes, including Bible, are granted only a qualified exemption—the exemption may be withdrawn by appropriate action of the governing board of the municipal corporation within which the particular real property is located (§ 421, subd 1, par [b]). In sum, then, beginning in 1972, unqualified exemption was granted to certain corporations and associations and qualified exemption was granted to others.
The issue presented for our determination is whether the real property of the American Bible Society is entitled to an unqualified exemption under paragraph (a) since the City of New York has taken appropriate action by the adoption of Local Law No. 46 to withdraw any qualified exemption which may have existed under paragraph (b).
We conclude that within the contemplation of subdivision 1 of section 421 the American Bible Society is "exclusively” (in the sense of principally or primarily) organized and conducted for Bible purposes and not for religious or educational purposes. It is true that foreseeably and inevitably the consequence of its corporate activities may be the advancement of the Christian religion; indeed the Holy Bible is the abecedarium of Christianity. There is, however, no reference in the Society’s charter documents to Christianity or to religion; to the contrary, the expressed purpose to publish and circulate "without note or comment”[4] precludes alignment with any doctrinal or denominational interpretations or positions. The promotion of religion in a broad or generic sense is the byproduct of the accomplishment of the Society’s corporate Bible purpose. In this sense we distinguish Matter of Watchtower Bible & Tract Soc. of N. Y. v Lewisohn (35 NY2d 92). In that case the corporation was the governing body of the religious group known as Jehovah’s Witnesses, thus "the ecclesiastical governing body of a recognized religious denomination with its own beliefs and form of organization” (p 97). In the present case there is no corporate affiliation between the American Bible Society and any denomination, sect, or organization having as its avowed purpose the furthering of a recognized religion, nor is the publication and distribution of the Bible by it directly associated with any denomination or sect, or with any such organization. *86 Similarly any contention that the American Bible Society is entitled to exemption under the category of educational purpose must be rejected (Matter of Swedenborg Foundation v Lewisohn, 40 NY2d 87, decided herewith).
We are fortified in our conclusion by the evident intention of our Legislature to reduce rather than to enlarge tax exemption. The Legislature in 1971 found that 30% of the total assessed valuation of real property in the State and one third in the City of New York was then exempt from taxation, and that the continuous removal from the tax rolls of taxable real property was imposing a particular hardship on local governments and increasing the burden of additional local taxation (L 1971, ch 414, § 1). To counter this situation the Legislature authorized local municipalities to withdraw tax exemption from those corporations and associations listed in section 421 (subd 1, par [b]). Thus, we conclude that it was intended to distinguish between "religious” and "bible” purposes, and to expose the latter to taxation unless in the particular instance the Bible purpose was clearly incidental only to a dominant religious purpose. It does not serve to insulate a Bible society from taxation to point out, however accurately, that there are significant religious overtones to its Bible activities.
Finally, we cannot accept the contentions of the American Bible Society that if section 421 (subd 1, par [b]) and Local Law No. 46 are otherwise held to authorize taxation of the Society’s real property, they are unconstitutional as violative of the due process or equal protection clauses of State and Federal Constitutions. (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 156-157, supra, and cases cited.) The Society does not meet the very heavy burden which the courts impose on the litigant who would attack the constitutionality of legislative enactment. (Montgomery v Daniels, 38 NY2d 41, 54, and cases cited.) The Legislature’s articulated desire to stem and to reverse the severe erosion of the local municipal tax base, accompanied by its recognition of the corollary serious predicament of local municipal finances, surely provides a rational basis for the expanded grant of authority to tax. Nor can it effectively be contended that the classifications which we conclude the Legislature has articulated in section 421 (subd 1, par [b]) are either irrational or impermissibly vague. (Cf. Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143, 156-157, supra, and cases cited.)
*87 We conclude that the American Bible Society is not entitled to have its property removed from the tax rolls. Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Wachtler, Fuchsberg and Cooke concur.
Order affirmed, without costs.

. That act provided in pertinent part: "Section 1. The real property of a corporation or association organized exclusively for the moral and mental improvement of men and women or for religious, charitable, missionary, hospital, educational, patriotic, historical or cemetery purposes, or for two or more of such purposes, and used exclusively for carrying out thereupon one or more of such purposes shall be exempt from taxation.”

. Local Law No. 46 provides in pertinent part: "Taxation of property of nonprofit organizations, pharmaceutical societies and dental societies. 1. Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for the moral or mental improvement of men and women or for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to *83 children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association * * * shall be taxable.”

. Section 421 (subd 1, pars [a], [b]) provides:
"1. (a) Real property owned by a corporation or association organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association or by another such corporation or association as hereinafter provided shall be exempt from taxation as provided in this section.
"(b) Real property owned by a corporation or association which is not organized or conducted exclusively for religious, charitable, hospital, educational, moral or mental improvement of men, women or children or cemetery purposes, or for two or more such purposes, but which is organized or conducted exclusively for bible, tract, benevolent, missionary, infirmary, public playground, scientific, literary, bar association, medical society, library, patriotic or historical purposes, for the enforcement of laws relating to children or animals, or for two or more such purposes, and used exclusively for carrying out thereupon one or more of such purposes either by the owning corporation or association, or by another such corporation or association as hereinafter provided, shall be exempt from taxation; provided, however, that such property shall be taxable by any municipal corporation within which it is located if the governing board of such municipal corporation, after public hearing, adopts a local law, ordinance or resolution so providing.”

. The Society’s constitution now provides in article I that the Society’s "only purpose shall he to promote the distribution of the Holy Scriptures without doctrinal note or comment”.